UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNATHAN SHARON,

     Applicant,

v.                                    CASE NO. 8:22-cv-1025-SDM-NHA

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

     Sharon applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for sexual battery, unnatural and lascivious acts, and lewd or lascivious molestation. Sharon is imprisoned for fifteen years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 7-2) The application asserts two grounds for relief, both of which are meritless.

## I. **BACKGROUND**[1]

     This case arises from Sharon's sexual abuse of his cousin. The abuse began when the victim was five or six and continued until she was fourteen. (Respondent's Exhibit 7 at 347) Sharon is six years older than the victim. (Respondent's Exhibit 7 at 336; Respondent's Exhibit 8 at 673) On several occasions, Sharon forced the victim to perform oral sex on him at their grandparents' house. (Respondent's

---

[1] This summary of the facts derives from the trial transcript. (Respondent's Exhibits 6–8)

Exhibit 7 at 342, 344, 347, 349)  During these incidents, Sharon touched the victim's breasts, buttocks, and vagina.  (Respondent's Exhibit 7 at 351–52)  When the victim fought back, Sharon subdued her through physical force — pushing, grabbing, shoving, and choking.  (Respondent's Exhibit 7 at 345, 348–49)

The victim disclosed the abuse to law enforcement when she was sixteen years old.  (Respondent's Exhibit 7 at 423)  Her mother and her grandmother urged her to "[say] it was a dream."  (Respondent's Exhibit 7 at 403–04)  Her grandmother later offered her $1,000 to "drop[ ] the case."  (Respondent's Exhibit 7 at 406)  The victim refused.  (Respondent's Exhibit 7 at 406)  At the time of trial, she no longer had a "real relationship with any of [her] family members."  (Respondent's Exhibit 7 at 406)

After the abuse was disclosed, law enforcement interviewed Sharon. (Respondent's Exhibit 7 at 450)  He was twenty-one at the time.  (Respondent's Exhibit 7 at 446)  Sharon initially denied any sexual abuse but later admitted that the victim performed oral sex on him "once" or "three times" when he was between the ages of fourteen and sixteen.  (Respondent's Exhibit 7 at 474, 495–96)  He was arrested later that day.  (Respondent's Exhibit 8 at 682)

The case went to trial.[2]  Sharon denied sexually abusing the victim and claimed that he admitted to the oral sex because he "felt that if [he] . . . just [gave the detective] something, [he would] be let go."  (Respondent's Exhibit 8 at 682)  The

---

[2] Sharon was tried in adult court because he was over the age of eighteen when he was charged.  *See* Fla. Stat. § 985.0301(5)(a) (juvenile court lacks jurisdiction "to dispose of a case" once "the child reaches 19 years of age").

jury found Sharon guilty of sexual battery by a person under eighteen on a child

under twelve, unnatural and lascivious acts, and lewd or lascivious molestation.

(Respondent's Exhibit 9)  He received a total sentence of fifteen years' imprisonment.

(Respondent's Exhibit 11)  The appellate court affirmed the convictions without a

written opinion.  *Sharon v. State*, 284 So. 3d 465 (Fla. 2d DCA 2019).  Sharon

unsuccessfully moved for post-conviction relief under Florida Rule of Criminal

Procedure 3.850.  (Respondent's Exhibits 23–24, 26, 29)  This federal habeas

application followed.  (Doc. 1)

## II. <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998).  Section 2254(d), which creates a highly deferential standard for federal court

review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in
>> light of the evidence presented in the State
>> court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons

given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without written opinions, the appellate court affirmed Sharon's convictions and affirmed the denial of his Rule 3.850 motion for post-conviction relief. The appellate court's *per curiam* decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This

> backward-looking language requires an examination of the
> state-court decision at the time it was made. It follows
> that the record under review is limited to the record in
> existence at that same time, *i.e.*, the record before the state
> court.

Sharon bears the burden of overcoming by clear and convincing evidence a
state court's fact determination. "[A] determination of a factual issue made by a
State court shall be presumed to be correct. The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing evidence." 28
U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but
not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th
Cir. 2001).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Sharon claims ineffective assistance of counsel, a difficult claim to sustain.
"[T]he cases in which habeas petitioners can properly prevail on the ground of
ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d
1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.
1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that
*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of
counsel claim:

> The law regarding ineffective assistance of counsel claims
> is well settled and well documented. In *Strickland v.
> Washington*, 466 U.S. 668 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of
> counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Sharon must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Sharon must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Sharon cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness

and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

**<u>Ground One:</u>**

Sharon contends that trial counsel provided ineffective assistance by failing to move for judgment of acquittal after the prosecution rested.  (Doc. 1 at 6)  According to Sharon, counsel should have argued that the victim "was not credible" and the prosecution presented "no physical evidence" of sexual abuse.  (Doc. 1 at 6; Doc. 3 at 24)

The post-conviction court rejected this claim.  (Respondent's Exhibit 24 at 1)  The court found that the "evidence was sufficient . . . to deny a motion for judgment of acquittal and send the case to the jury."  (Respondent's Exhibit 24 at 1)  As the court explained, "the victim testified that [Sharon] forced her to perform oral sex on him on numerous occasions."  (Respondent's Exhibit 24 at 1)  During these incidents, Sharon "was alleged to have touched the victim's buttocks, vagina, and breasts."  (Respondent's Exhibit 24 at 1)  The court explained that any "discrepancies in the testimony of the victim and the other witnesses" were "ultimately . . . an issue of fact to be determined by the jury."  (Respondent's Exhibit 24 at 1)  Therefore, the court found that counsel was not "ineffective for failing to raise a motion for judgment of acquittal at the close of the state's case." (Respondent's Exhibit 24 at 1)

This ruling was reasonable.  "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's

construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). The post-conviction court found that a motion for judgment of acquittal would have failed because the evidence was sufficient to "send the case to the jury." (Respondent's Exhibit 24 at 1)  "[W]hether the state's evidence is sufficient to withstand a motion for judgment of acquittal . . . is solely a state law matter." *Sweezy v. Sec'y, Dep't of Corr.*, No. 8:20-cv-1623-TPB-SPF, 2023 WL 3251398, at *4 (M.D. Fla. May 4, 2023); *see also Smith v. Sec'y, Dep't of Corr.*, No. 8:18-cv-49-KKM-SPF, 2021 WL 1214948, at *12 (M.D. Fla. Mar. 31, 2021) ("[T]o the extent the state court concluded the motions for judgment of acquittal would have been denied, this Court is obliged to defer because that is a question of state law.").  Therefore, the post-conviction court "already has told us how the issue[ ] would have been resolved under Florida state law had [counsel] done what [Sharon] argues [she] should have done." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005).

Because the post-conviction court "authoritatively decided as a matter of [Florida] law" that the motion would have failed, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024).  "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).  As a result, the post-conviction court reasonably concluded that counsel was not deficient for failing to move for judgment of acquittal.  *See Combs v. Sec'y, Dep't of Corr.*, No. 19-14406-G, 2020 WL 2319889, at *2 (11th Cir. Mar. 6, 2020) (counsel not deficient for failing to

present argument "in support of a judgment of acquittal" because a federal court
must "defer to the state court's application of its own law in determining that there
was sufficient evidence on all the elements to allow the charge to go to the jury").

**Ground Two:**

Sharon faults trial counsel for failing to "properly argue for mitigation" at
sentencing.  (Doc. 1 at 8)  According to Sharon, counsel should have requested a
"reduced sentence" because he was a child "at the time of the offense[s]."  (Doc. 3
at 27–29)  Sharon argues that counsel could have supported this request with
"scientific evidence of juvenile brain development."  (Doc. 3 at 28)  Had counsel
"properly and adequately argued" for mitigation, Sharon allegedly would have
received "a lesser term of incarceration" or "even a term of nothing more than
probation."  (Doc. 1 at 8)

The respondent argues that this claim is unexhausted and procedurally
defaulted.  (Doc. 7 at 21)  The district court need not decide whether the claim is
defaulted because it fails on the merits.  *See Dallas v. Warden*, 964 F.3d 1285, 1307
(11th Cir. 2020) ("As we have said many times and as the Supreme Court has held, a
federal court may skip over the procedural default analysis if a claim would fail on
the merits in any event.").  Sharon cannot "show that but for his counsel's [alleged]
deficiency, there is a reasonable probability he would have received a different
sentence."  *Porter v. McCollum*, 558 U.S. 30, 41 (2009).

Sharon faced a statutory maximum of life imprisonment.  *See State v. Griffith*,
675 So. 2d 911, 912 n.1 (Fla. 1996) ("Sexual battery by a person under eighteen upon

a child under twelve is a life felony punishable by life imprisonment.").  During

sentencing, counsel urged the court to "treat[ ] [Sharon] differently" because he was

a child when the abuse occurred.  (Respondent's Exhibit 10 at 21)  Counsel argued

for "probation" or "minimal prison" and claimed that Sharon "was too young to

appreciate the consequences" of his actions.  (Respondent's Exhibit 10 at 21–22)

Counsel added that children "don't necessarily have the ability to comport their

behavior in the manner an adult is supposed to."  (Respondent's Exhibit 10 at 21)

Counsel asked the court to "give [Sharon] supervision so that he can show that . . .

what happened when he was twelve or thirteen[ ] isn't something that he is going to

carry into adulthood."  (Respondent's Exhibit 10 at 22)  The prosecution responded

with a request for "twenty years in Florida State Prison."  (Respondent's Exhibit 10

at 26)  In support, the prosecution noted that "according to his own statement,"

Sharon was "fourteen, fifteen, or sixteen years of age" when "the oral sex and

touching" occurred.  (Respondent's Exhibit 10 at 25)

 The court imposed a total sentence of fifteen years' imprisonment.

(Respondent's Exhibit 10 at 33–34)  The court considered several factors in

fashioning this sentence, including (1) "the evidence introduced at trial," (2) the "fact

that there was more than one incident," and (3) "[t]he relative ages of [Sharon] and

the victim at the time these incidents occurred."  (Respondent's Exhibit 10 at 33)

 In short, counsel requested mitigation based on Sharon's age at the time of the

crimes, and the court considered his youth in imposing sentence.  Sharon contends

that counsel should have bolstered her argument with "scientific evidence" that his

"brain was not developed." (Doc. 3 at 28, 32)  This evidence allegedly would have shown that Sharon was "immatur[e], reckless[ ], and impetuous[ ]" when he abused the victim. (Doc. 3 at 30)  As the Supreme Court has explained, however, "common sense" dictates that "children have a lack of maturity and an underdeveloped sense of responsibility." *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *see also Roper v. Simmons*, 543 U.S. 551, 569 (2005) ("[A]s any parent knows . . . , [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults."). Sharon fails to show that "scientific evidence" on this issue would have created a "reasonable probability of a different sentencing result." *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1246 (11th Cir. 2010).  Thus, he cannot meet his "high" burden of establishing prejudice.[3]  *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1323 (11th Cir. 2002).

## IV. <u>CONCLUSION</u>

Sharon's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Sharon and **CLOSE** this case.

---

[3] Sharon asserts that "counsel should have argued for consideration under [Florida's] juvenile sentencing laws." (Doc. 1 at 8)  But "a person who has been found guilty of a capital or life felony may not be sentenced as a youthful offender."  Fla. Stat. § 958.04(1)(c).  Sharon was convicted of a life felony — sexual battery by a person under eighteen on a child under twelve. *See Griffith*, 675 So. 2d at 912 n.1 ("Sexual battery by a person under eighteen upon a child under twelve is a life felony punishable by life imprisonment.").  Therefore, he could not be sentenced as a youthful offender.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Sharon fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Sharon must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 10, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE